**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,<br><br><br>*Plaintiff,*<br><br>v.<br><br>NICHOLAS J. DUBOIS; MRS. NICHOLAS J DUBOIS, HIS WIFE; and the UNITED STATES OF AMERICA,<br><br><br>*Defendants.* | No. 22-cv-04606 (MEF)(JSA)<br><br><br>**OPINION and ORDER** |

**Table of Contents**

I.   **Background**

    A.   **The Allegations**

    B.   **Procedural History**

    C.   **The Motion**

II.  **The Court's Approach**

III. **Federal Question Jurisdiction**

IV.  **Rule 19**

    A.   **Steps One, Two, and Three**

    B.   **Step Three: General Principles**

    C.   **Step Three: A Preview**

    D.   **The Early English History**

        1.   **The Cases**

        2.   **A Possible Implication**

    E.   **The Early American History**

        1.   **Reception**

        2.   **The Junior Lienholders Debate**

**F.**    **Junior Lienholders Today**

**G.**    **Junior Lienholders: Federal Law**

　　**1.**    **A Source of Federal Law**

　　**2.**    **Choice of Law**

**H.**    **This Case**

**V.**    **Remand or Dismiss**

**VI.**    **Conclusion**

*    *    *

A mortgage company filed a foreclosure action in state court.

One of the defendants, the homeowner who held the mortgage, removed the case to federal court.

The mortgage company has now moved to send the case back to state court.

The motion is granted.

*    *    *

## I.    Background

### A.    The Allegations

In 2001, a man[1] took out a mortgage on his New Jersey house. See Notice of Removal, Exhibit 1 ("Exhibit 1") (ECF 1-1) ¶¶ 1-2; Notice of Removal (ECF 1) ¶ 10.

At some point, he stopped making the payments. See Exhibit 1 ¶ 8.

And at some point after that, he apparently did not pay all of his federal tax bills. See id. ¶ 5(b). So the United States put a tax lien on the house. See id.

---

[1]  Nicholas J. DuBois.  On a remand motion, the Court must treat all the allegations in the state court complaint as true. See Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987). Whether they are true --- that would be an issue for later in the case.

### B.   **Procedural History**

In 2022, the company that holds the mortgage,[2] see id. ¶ 2-h, sued in New Jersey state court.  See Notice of Removal ¶ 1.  The suit looked to foreclose on the mortgage.  See Exhibit 1 at 7.

The defendants named in the state-court foreclosure action[3] were (i) the homeowner and also (ii) the United States.[4]

The homeowner removed the case to federal court.  See Notice of Removal at 1.

From here, the mortgage company is called "the Plaintiff" and the homeowner is called "the Defendant."[5]

---

[2]  Nationstar Mortgage LLC, d/b/a Mr. Cooper.

[3]  A person identified as the homeowner's wife was also named as a defendant.  See Exhibit 1 ¶ 5(a).  There is some complexity as to whether she should have been named.  See id.; Notice of Removal ¶ 3(a)(iii); Declaration of Defendant in Opposition to Plaintiff's Motion to Remand (ECF 8-1) ¶ 6; Nov. 6, 2025 Letter (ECF 77) at 2.  But nothing turns here on whether she is a proper defendant.  So put her aside for this Opinion and Order.

[4]  The foreclosure lawsuit presumably named the United States because under New Jersey law it had to: "[o]ne of the basic rules of the road in New Jersey foreclosure actions is that '[a]ll subsequent . . . encumbrances are brought into court.'" Nationstar Mortgage LLC v. DuBois, 808 F. Supp. 3d 679, 679 n.4 (D.N.J. 2025) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 112 (2006)).  And "[a] later-filed tax lien is just that, a 'subsequent . . . encumbrance[ ].'"  Id.

[5]  The Defendant has no lawyer on this case.  But he is himself a lawyer.  In that circumstance, should his papers be taken with the "liberal" spirit generally given to pro se filings?  The law is not crystal clear on this point.  See Cosma v. Powell, 684 F. Supp. 3d 287, 289 n.1 (D.N.J. 2023).  But the Court opts to treat the Defendant as it would an ordinary pro se.  Out of an abundance of caution.  Because the law in the relevant areas can be technical.  And because the Defendant's submissions --- though plainly thoughtful, as all the parties' have been --- do not suggest special fluency in this corner of the law.

### C.   The Motion

The Plaintiff has moved to undo the Defendant's removal, and to send this case back to state court.  See Notice of Motion to Remand Matter to Superior Court of New Jersey (ECF 6).

The Plaintiff's argument: the Court does not have jurisdiction, so the case cannot go forward here.  See Brief in Support of Plaintiff's Motion to Remand (ECF 6-4) at 2-3.

## II.   The Court's Approach

Preview here the Court's overall approach to the jurisdictional questions raised by the Plaintiff's motion to remand.

*     *     *

The party that moves a lawsuit into federal court has to show that the federal court has subject-matter jurisdiction over the case.  See Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007).

To carry that burden, the Defendant laid out a number of bases for jurisdiction here.  See Notice of Removal ¶¶ 2-3.

*     *     *

A first set of these were crossed off the list before, in a prior opinion.  The Court held that those jurisdictional arguments did not work.  See Nationstar Mortgage LLC v. DuBois, 808 F. Supp. 3d 679, 680 n.6 (D.N.J. 2025) (explaining why).

*     *     *

The Defendant's second argument is still live.  Namely, the argument that there is federal question jurisdiction here.

But that does not get off the ground.  The United States' tax lien does not, standing alone, check the federal-question box. See Part III.

*     *     *

The Defendant's third and final argument is that there is diversity jurisdiction.

As to this argument, there is a problem from the get-go.  The United States is named as a party in this case.  So there can be no diversity jurisdiction.  See DuBois, 808 F. Supp. 3d at 682-83.

4

To sidestep this, the Defendant essentially argues (i) that the United States does not need to be in the case (a question controlled by Federal Rule of Civil Procedure 19), and therefore (ii) it should be dropped from the case (presumably under Rule 21).  With the United States gone, the argument goes, there can be diversity jurisdiction.

This is not persuasive.

As explained below, the United States needs to remain in the case.  Under the older (and still used) terminology, the United States is "indispensable" here.  It must be kept in.  And therefore, the case cannot go forward --- because with the United States on board, there is no diversity jurisdiction.  See Part IV.[6]

---

[6]   Two wrinkles.

First, the Defendant presses the Rule 19/Rule 21 argument set out in the text in a somewhat elliptical way --- by labeling the United States as a "nominal" party.  See Opposition to Magistrate's Report and Recommendation (ECF 54) at 5-6.  A nominal party does not need to be in a case under Rule 19.  See, e.g., Sec. & Exch. Comm'n v. Cherif, 933 F.2d 403, 414 n.13 (7th Cir. 1991); Mallalieu-Golder Ins. Agency, Inc. v. Exec. Risk Indem., Inc., 254 F. Supp. 2d 521, 524-25 (M.D. Pa. 2003); see generally Steel Valley Auth., 809 F.2d at 1010; 13E Wright & Miller's Federal Practice & Procedure § 3606 (3d ed. 2025).  And so a nominal party can be dropped under Rule 21.  See Scott v. Carr, 2020 WL 6381812, at *2 n.1 (W.D. Wash. Oct. 30, 2020); Moubry v. Kreb, 58 F. Supp. 2d 1041, 1048 (D. Minn. 1999); Reynolds & Reynolds Co. v. Universal Forms, Labels, & Sys., Inc., 965 F. Supp. 1392, 1397 (C.D. Cal. May 19, 1997).  That is the basic Rule 19/Rule 21 argument alluded to in the text, though cast in somewhat different terminology by the Defendant pro se.

Second, the Court previously noted that it understood the Defendant to be pressing essentially the Rule 19/Rule 21 argument spelled out in the text.  See DuBois, 808 F. Supp. 3d at 684.  After that, the Defendant folded a new argument into the mix.  See Defendant's Dec. 4, 2025 Letter (ECF 87) at 1.  Having added a new argument, did the Defendant fully shift away from his old Rule 19/Rule 21 argument?  Hard to say.  In adding his new argument, the Defendant indicated that "as a practical matter, the U.S. is likely a de facto necessary party."  Id.  The question is close.  But the Court does not take this as a

*    *    *

There is, in sum, no jurisdiction here.

Should the case be dismissed outright or should it be remanded back to state court?

The Defendant seeks dismissal.  See Defendant's Dec. 4, 2025 Letter ("Defendant's Dec. 2025 Letter") (ECF 87) at 1, 3-4.  But a federal statute requires remand.  So the Court will return this case to state court.  See Part V.

*    *    *

Move now to a fuller discussion of the conclusions sketched out above.  That takes up the rest of this Opinion and Order.

## III.  **Federal Question Jurisdiction**

Look first to the Defendant's argument that there is federal question jurisdiction here, under Title 28, United States Code, Section 1331.  Per the Defendant, "the inclusion of the U.S. in a foreclosure action based upon an IRS lien" creates "a federal question."  See Defendant's Dec. 2025 Letter at 1.

This argument does not clear the bar.

---

concession that the United States is indispensable, such that there is no call for a Rule 19/Rule 21 analysis.  First, the statement is thoroughly hedged --- "as a practical matter," "likely," "de facto."  Second, a "necessary party" determination (what the Defendant suggests is "likely" for the United States) triggers an indispensability analysis.  It does not answer it. See, e.g., Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993).  Third, it is not clear in context whether the Defendant meant to state a position on indispensability or, rather, to discuss the implications of an indispensability determination should the Court eventually make one itself.  See Defendant's Dec. 4, 2025 Letter at 4 (describing a conclusion of indispensability "toward which this Court is [apparently] leaning," and laying out a position as to the relevant "remedy" "if" that approach is taken).  And fourth, the Defendant is pro se.  See footnote 5.  In light of all this, the Court reads the Defendant as not having conceded away the question of whether the United States is indispensable --- and therefore takes on that that question in this Opinion and Order. (The Defendant's newly added argument is addressed, too. See Part V.)

6

There can be Section 1331 jurisdiction "in two ways."  <u>Gunn</u> v. <u>Minton</u>, 568 U.S. 251, 257 (2013) (cleaned up).

<u>First</u>, "when federal law creates the cause of action asserted." <u>Id</u>. (citing <u>Am. Well Works Co.</u> v. <u>Layne & Bowler Co.</u>, 241 U.S. 257, 260 (1916)).

But that is not on the table here.  The complaint does not meaningfully refer to federal law.

<u>Second</u>, even a <u>non</u>-federal-law claim can sometimes cause Section 1331 jurisdiction to kick in.

As relevant here, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  <u>Gunn</u>, 568 U.S. at 258.

Per the Defendant, there is Section 1331 jurisdiction over this case because a federal tax lien is baked into it.  <u>See</u> Notice of Removal ¶ 13.  And that means, he argues, that a "federal issue" is "necessarily raised."  <u>See</u> Defendant's Dec. 2025 Letter at 1-3.[7]

But the general rule is that "the mere existence of a federal tax lien does not suffice to present a federal question."  <u>Amoco Prod. Co.</u> v. <u>Aspen Grp.</u>, 8 F. Supp. 2d 1249, 1253 (D. Colo. 1998); <u>see</u> <u>also</u> <u>Com. Nat'l Bank</u> v. <u>Demos</u>, 18 F.3d 485, 488 (7th Cir. 1994) (noting that a "complaint's reference to [a] tax lien filed by the Internal Revenue Service" does not "present a federal question").

There may possibly be exceptions to this rule.

Maybe, for example, there is federal question jurisdiction where the key question is whether a federal lien will get priority[8]

_____

[7]  The quoted text is from the Supreme Court's <u>Gunn</u> decision. <u>See</u> <u>Gunn</u>, 568 U.S. at 258

[8]  A lien is "[a] legal right or interest that a creditor has in another's property."  <u>Lien</u>, <u>Black's Law Dictionary</u> (12th ed. 2024).  Liens can be classified based on their relationship to other liens --- in terms of the answer to the legal question of which of the liens has <u>priority</u> over the other.  If, for example, the law requires lien 1 to be paid off from the property before lien 2 can step up and try to get paid --- then lien 1 is said to have priority over lien 2.  The shorthand for

over other liens.  In that situation, the argument might go, there would "necessarily," Gunn, 568 U.S. at 258, be questions to ask and answer about the legal status of the federal lien --- and maybe that is enough.[9]

But that possible exception --- if it exists --- can have no bearing on this case.

The reason: there is no back-and-forth between the parties on the priority of the federal tax lien.[10]  The lien's priority is not "actually disputed."  Id.  And there is no reason to assume that debates about tax lien priority will be "necessarily raised" at some point in this litigation.  Id.

\*   \*   \*

In sum: with his tax lien argument, the Defendant has not established that there is Section 1331 jurisdiction here.

---

that conclusion: lien 1 is senior and lien 2 is junior.  (Liens can be classified in other ways, too.  For example, by the type of creditor that holds the lien.  Think of a mechanic's lien or a garage keeper's lien.  The creditor that imposes a tax lien is a government taxing authority.)

[9]  For roughly this line of thinking, see Bank of New York Mellon v. Glavin, 2011 U.S. Dist. LEXIS 158667, at *3-5 (W.D. Wis. Oct. 13, 2011), as cited by the Defendant.  See Defendant's Dec. 2025 Letter at 1-2; cf. also United States v. Brosnan, 363 U.S. 237, 240 (1960) ("matters directly affecting the nature or operation of [federal tax] liens are federal questions").

[10]  The usual way to decide whether one lien is senior to another, see footnote 8, is a look to timing.  The "'first in time'" lien generally gets "a prior legal right which is entitled to prior satisfaction out of the property."  6 Debtor-Creditor Law § 49.02 (Theodore Eisenberg & James M. Lawniczak eds., 2026).  Under this rule, the United States' later-in-time tax lien would be junior to the lien the mortgage company has on the house by virtue of the mortgage.  At oral argument, the United States suggested that its lien is junior.  See Transcript of Teleconference ("Transcript") at 3-5, 16, Nationstar Mortgage LLC v. DuBois, No. 22-04606 (D.N.J. Nov. 17, 2025).  And the Plaintiff sees it the same way.  See Plaintiff's Nov. 25, 2025 Letter at 2 (describing the United States as a "subordinate lienholder").  So there is no daylight between the lienholders' views as to the priority of the United States' tax lien.  Everyone agrees the tax lien is junior.

## IV.  Rule 19

With possible Section 1331 jurisdiction no longer in play, the question becomes whether there is diversity jurisdiction, the last of the jurisdictional bases cited by the Defendant.

To set the stage for analysis of that question, step back for a moment to look at the case as a whole.

\*     \*     \*

The main players in this foreclosure action are the Plaintiff-mortgage company and the Defendant-homeowner.

And in a case between just the two of them, there would seem to be diversity jurisdiction.  The Plaintiff is a citizen of Delaware.  See Plaintiff's Nov. 6, 2025 Letter (ECF 79).  The Defendant of New Jersey.  See Defendant's Nov. 6, 2025 Letter (ECF 77) at 1.  And they are going back and forth over a $125,000 mortgage.  See Exhibit 1 ¶ 1-d.

All of this likely[11] checks the box for diversity jurisdiction. See 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between --- citizens of different States[.]").

But there is another party here, too.  As noted, the United States was brought into this mortgage foreclosure suit because it has a tax lien on the house.  And that undoes any diversity jurisdiction that might otherwise have existed.  See DuBois, 808 F. Supp. 3d at 682.

So it would appear that there is no diversity jurisdiction here.

\*     \*     \*

But the Court takes the Defendant[12] as arguing for a way to keep this case in federal court.  The argument: because the United States can be dispensed with (under Rule 19), the United States should be dismissed (under Rule 21) --- and with the United States out of the case, diversity jurisdiction is preserved.

---

[11]  But maybe not surely.  See DuBois, 808 F. Supp. 3d at 680 n.6.

[12]  See footnote 6.

## A.    <u>Steps One, Two, and Three</u>

The argument sketched out just above turns on whether the United States needs to be kept in the case under Rule 19.

Start working through the Rule 19 analysis here.[13]

*    *    *

Rule 19 works in "three steps."  <u>Epsilon Energy USA, Inc.</u> v. <u>Chesapeake Appalachia, LLC</u>, 80 F.4th 223, 232 (3d Cir. 2023); <u>see also</u> 4 <u>Moore's Federal Practice</u> § 19.02 (3d ed.).

*    *    *

<u>First</u>, the focus is on Rule 19(a), <u>see</u> <u>Epsilon Energy</u>, 80 F.4th at 232-33 --- on whether a given party "must be" a part of a case,[14] on whether it is "necessary."[15]

There is no real debate on this here.

The United States, as noted, is a junior lienholder here.  <u>See</u> footnote 10.  Based on this, the Plaintiff believes the United States is necessary.  <u>See</u> Brief Response to Defendant's Objections (ECF 72) at 3.  The United States all but says that it agrees.  <u>See</u> Dec. 4, 2025 Letter from the United States (ECF 89) at 1.  And the Defendant does not affirmatively contest the

---

[13]  The language of Rule 19 focuses on whether a party needs to be <u>added</u> to a case, and lays out the standard that governs that analysis.  <u>See</u> Fed. R. Civ. P. 19; <u>accord</u>, <u>e.g.</u>, 7 <u>Wright & Miller's Federal Practice & Procedure</u> § 1602 (3d ed. 2025).  But the issue here is whether a party --- the United States, already in the case --- can be <u>subtracted</u> from the case under Rule 19/Rule 21, to keep diversity jurisdiction intact.  But this is not a meaningful difference.  Courts have long looked to Rule 19 to decide whether a party can be <u>dismissed</u> from a case (under Rule 21) to preserve diversity jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Newman-Green, Inc.</u> v. <u>Alfonzo-Larrain</u>, 490 U.S. 826, 832-38 (1989).  And the parties here all agree that a Rule 19/Rule 21 analysis is the way forward.  The United States says so explicitly.  <u>See</u> Dec. 4, 2025 Letter (ECF 89) at 1-2.  So does the Plaintiff.  <u>See</u> Nov. 25, 2025 Letter (ECF 86) at 1, 4.  And the <u>pro se</u> Defendant does, too, though more elliptically.  <u>See</u> footnote 6.

[14]  Fed. R. Civ. P. 19(a)(1)

[15]  <u>Epsilon Energy</u>, 80 F.4th at 233 (cleaned up).

10

point.  See Defendant's Dec. 2025 Letter at 1 ("the U.S. is likely a de facto necessary party").

The United States is a necessary party under Rule 19(a).  So move on to the next part of the Rule 19 analysis.

\*    \*    \*

At the second rung on the ladder, the relevant question is this: if the necessary party (the United States) stays on board --- can the case keep running forward in federal court "without depriving the court of the ability to hear the case"?  Epsilon Energy, 80 F.4th at 232.

No, not here.  With the United States in the case, there is no diversity jurisdiction.  See DuBois, 808 F. Supp. 3d at 682. And there is no other basis for jurisdiction.  See Part II, Part III.

\*    \*    \*

That brings things to the third and final part of the Rule 19 analysis.  See Epsilon Energy, 80 F.4th at 232-35.

This is less a finish line than "a fork in the road."  Dubois, 808 F. Supp. 3d at 683.

Down one of the available paths, two steps: (i) dismiss the United States from the case under Rule 21, and (ii), with "the impediment to diversity jurisdiction" eliminated, keep the case in federal court on a diversity-jurisdiction basis.  Dubois, 808 F. Supp. 3d at 683 (citing Doolin v. Kasin, 424 F. App'x 106, 110 (3d Cir. 2011)).[16]

Down the other path, two different steps: (i) keep the United States on the caption, and then (ii) remove this case from the federal court's docket for lack of jurisdiction.  See id.[17]

---

[16]  The practical logic of going this route: the main event is the dispute between the homeowner and the mortgage company. That is the locomotive.  So it should determine where this case is heard.  Not the tacked-on caboose of the United States' tax lien.

[17]  The logic of this path: the Plaintiff-mortgage company's goal here is to clear up the title on the house, so that it can smoothly sell it.  And clearing title requires addressing not only one encumbrance on the title (the Defendant-homeowner's mortgage) but the other one, too (the United States' lien on the

11

There are, in short, two mirror-image options for going forward. Remove the United States as a party, and keep this case in federal court.  Or keep the United States as party, and remove this case from federal court.[18]

## B.    Step Three: General Principles

Before getting down to the nitty-gritty of the Rule 19/step-three analysis, some clarifying points.

As to the old legal terminology in this area.  As to the source of the current law in this area.  And then as to how they fit together.

\*    \*    \*

Terminology first.

Traditionally, "procedural terminology divide[d] parties to litigation into four general categories: 'improper' parties, 'proper' parties, 'necessary' parties, and 'indispensable' parties."  Geoffrey C. Hazard, Jr., Indispensable Party: The Historical Origin of a Procedural Phantom, 61 Colum. L. Rev. 1254, 1254 (1961); see also Bernard Shapiro, Comment, Parties: Necessary and Indispensable Parties, 29 Cal. L. Rev. 731, 731-32 (1941); 4 Moore's Federal Practice § 19.02.

Whereas improper parties "ought not to be in court," proper parties are those who "may appropriately be brought into the litigation but whose absence will occasion no concern."  Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1254.

Within the overarching category of proper parties sit the two other sorts of parties listed out above --- necessary parties and indispensable parties.[19]

"[A] necessary party is one whose relation to the controversy is such that in the interests of orderly and consistent judicial administration he should be brought in if at all possible."

property).  See Plaintiff's Nov. 25, 2025 Letter at 3-4; Dec. 4, 2025 Letter from the United States at 1; Transcript at 7-8, 13-14, 16-17.

[18]  Or maybe dismiss it outright.  See Defendant's Dec. 2025 Letter at 1, 3-4 (arguing for this).

[19]  There are proper parties that are neither necessary nor indispensable.

Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1254; see also Shields v. Barrow, 58 U.S. (17 How.) 130, 139 (1854); 7 Wright & Miller's Federal Practice & Procedure § 1604 (3d ed. 2025).

An indispensable party is "one whose relationship to the controversy is so immediate and so intimate that the court is said to be unable to proceed without him."  Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1254.

Necessary parties and indispensable parties are, in short, must-be-there parties.  Their presence is required.  An indispensable party is a special type of necessary party.  Its presence is required to the point that, without it on board, the case is simply cut off at the pass.  It cannot go forward.

* * *

Second, law.

The issue of indispensability in federal court "is one of federal law."  Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102, 125 n.22 (1968); see also, e.g., Huber v. Taylor, 532 F.3d 237, 247 (3d Cir. 2008); Shetter v. Amerada Hess Corp., 14 F.3d 934, 937 (3d Cir. 1994); Sheldon v. W. Bend Equip. Corp., 718 F.2d 603, 606 (3d Cir. 1983).

It is governed by Federal Rule of Civil Procedure 19.

* * *

Third, bring the above together, by sketching out the interaction between (i) the old terminology (improper, proper, necessary, and indispensable parties) and (ii) the current law (under Rule 19).

Rule 19 was changed in 2007.  Among other things, the term "necessary" was swapped out; it was replaced with "required." And "indispensable" was dropped out of the Rule entirely.

But all of this was just a matter of wording.  "[T]he substance and operation of the Rule . . .  are unchanged."  Republic of Phil. v. Pimentel, 553 U.S. 851, 856 (2008).

So even after the 2007 revision, courts have continued to rely on the old "necessary" label and the caselaw built up for years around it.  See, e.g., Galette v. N.J. Transit Corp., 2026 WL 598450, at *10 (U.S. Mar. 4, 2026); Epsilon Energy, 80 F.4th at 233; Abdurahman v. Prospect CCMC LLC, 42 F.4th 156, 162 (3d Cir.

13

2022); Arcelik A.S. v. E.I. DuPont de Nemours & Co., 856 F. App'x 392, 398 (3d Cir. 2021).

And so too with the old "indispensable" terminology, and the long-standing caselaw associated with it. See, e.g., Mississippi v. Tennessee, 595 U.S. 15, 21 (2021); Levin v. Com. Energy, Inc., 560 U.S. 413, 419 n.1 (2010); Avenatti v. Fox News Network LLC, 41 F.4th 125, 131 (3d Cir. 2022); In re Howmedica Osteonics Corp., 867 F.3d 390, 404-05, 408-09 (3d Cir. 2017); see also Hain Celestial Grp., Inc. v. Palmquist, 146 S. Ct. 724, 733 (2026); footnote 20.

Bottom line: analysis under today's Rule 19(b) continues to draw on the old legal concepts --- necessity and indispensability.

How does the traditional necessity/indispensability approach mesh with the three-step analysis laid out in the current Rule 19?

Roughly as follows.

If a party is assessed to be a "required" party (in the first step, under Rule 19(a)), that means it is "necessary" for it to be in the case. But if the cost of its being on board is that there can be no federal court jurisdiction (as determined at step two, under Rule 19(b)) --- then it is on to the third step, to determine whether that cost is simply too high, a measure that is taken using the various Rule 19(b)(1)-(4) factors.

If the cost is too high, then the required/necessary party can be dropped (under Rule 21). The case can go on, but without that party. The necessary party was necessary. But not that necessary.

On the one hand, if the cost of having no federal court jurisdiction (again, as measured under Rule 19(b)(1)-(4)) is not too high, then the required/necessary party should be kept on the caption. The necessary party was just that: necessary. The case cannot go forward without it. To reflect that conclusion, the necessary party gets pinned with a new label. It is now called an indispensable party.

"[T]he one-word label, 'indispensable'" is "a handy, well-known, and compact term for summarizing the [court's bottom-line] decision" --- and that was true under the "traditional" approach, and also now, under the structured three-step analysis

14

envisioned by Rule 19.  4 Moore's Federal Practice § 19.05 [7] (3d ed. 2026).

### C.   Step Three: A Preview

The United States, as noted, holds a junior lien on the Defendant's house, and that house is the object of the underlying foreclosure action here.

The United States is required (Rule 19, step one) but the case cannot go forward here with it on board (Rule 19, step two).  Is it possible for the case to go forward (Rule 19, step three) without it?

\*     \*     \*

The stepping off point for this analysis is the text of Rule 19. See generally Berk v. Choy, 146 S. Ct. 546, 552 (2026).

But the text does not speak to the relevant issue.  So the Court first turns to the caselaw and then circles back to the Rule 19 factors.

Take here a preview of the analysis to come.

\*     \*     \*

Two key 18th century English cases set down the foundation stones of indispensability law.[20]

---

[20]  Rule 19 dates back to 1938 and underwent substantial revision in 1966.  See Benjamin Kaplan, Continuing Work of the Civil Committee: The 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 363-66 (1967).  Some of the cases discussed in this Opinion and Order predate the Rule.  But pre-Rule 19 cases can be used to get at the meaning of today's Rule 19.  This is because Rule 19 draws upon a much older body of law.  See 7 Wright & Miller's Federal Practice & Procedure § 1601 (3d ed. 2025); see also Fed. R. Civ. P. 19 1937 advisory committee's notes (citing Equity Rules 37, 39, and 42); Epsilon Energy, 80 F.4th at 230-31.  The Supreme Court has approved the continued consideration of the pre-Rule 19 precedents.  See, e.g., Provident Tradesmens, 390 U.S. at 124 (describing the 19th-century conception of indispensability as "still valid today, and consistent with the requirements of Rule 19"); Pimentel, 553 U.S. at 863 (noting that "[alt]hough the text has changed, the new Rule 19 has the same design" as earlier versions of the indispensability rule).  And the Third Circuit

15

These cases might potentially be read to suggest that lienholders (like the United States here) are indispensable, such that they must be brought into mortgage foreclosure cases (like this one).  See Part IV.D.

English indispensability law became part of American law during the 19th century.  See Part IV.E.1.  But the question of whether lienholders are indispensable in mortgage foreclosure cases spun off a debate.  Some 19th century courts said yes.  Others said no.  See Part IV.E.2.

That debate continues today.  See Part IV.F.  State courts handle virtually all of our country's mortgage foreclosure actions.  Under some states' laws, lienholders are indispensable to mortgage foreclosure actions; they must be brought in.  Under other states' law, lienholders are not indispensable to mortgage foreclosure actions; they do not need to be brought in.  See id.

In the face of all this long-fragmented caselaw, how to proceed as to the lienholder (the United States) in this mortgage foreclosure case?

\*     \*     \*

The question is, as noted, answered as a matter of federal law. See Part IV.B.

But to decide whether a lienholder should be treated as indispensable to a mortgage foreclosure case, federal courts may be guided by state law.[21]  See Part IV.G.1.

Which state's law should do the guiding?

The law of the state where the mortgage foreclosure action is proceeding (or was proceeding, in the case of a removal to federal court).  See Part IV.G.2.

\*     \*     \*

---

has done the same.  See Epsilon Energy, 80 F.4th at 230.  The older decisions remain "relevant to an understanding of how [Rule 19] should be applied." 7 Wright & Miller's Federal Practice & Procedure § 1604.

[21]  In particular that part of a state's joinder and indispensability law that lay out which parties must be made part of a state mortgage foreclosure action.  See Part IV.G.1.

In this case, the mortgage foreclosure action was going forward in New Jersey and the underlying property is located in New Jersey.

Under New Jersey law, a junior lienholder (like the United States) must be made part of the mortgage foreclosure case.  As a matter of New Jersey law, it is indispensable.  See Part IV.H.

This supports the conclusion that, under federal law, the United States should be taken as indispensable here.

And the factors listed out in Rule 19(b)(1)-(4) push in the same direction.  See Part IV.H.

                    *       *       *

In light of all this, the Court concludes that the United States must be in this litigation.  It is indispensable.  The case cannot go forward without the United States.  And to allow it to go forward with the United States, this case cannot continue in federal court.

                    *       *       *

Start unpacking all of this now.

### D.    __The Early English History__

The law of indispensability first developed toward the tail end of the 1700s, in England's equity courts.  See Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1254, 1271, 1273-75; see also Epsilon Energy, 80 F.4th at 230-31.[22]

The "start[]" of the doctrine, Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1273, runs back to Lowe v. Morgan, 28 Eng. Rep. 1183 (Ch. 1784), and the key decision came three years later, in Fell v. Brown, 29 Eng. Rep. 151 (Ch. 1787).[23]

---

[22]  Before the late 1700s, courts "sought to secure joinder in the suit of all the persons interested in the underlying controversy, but many times tolerated the absence of an interested person when it was shown that his joinder was impossible, or impractical, or involved undue complication." Kaplan, Continuing Work, 81 Harv. L. Rev. at 359; see also Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1271.

[23]  Fell is "[t]he leading case on indispensability."  Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1274.  For cases noting this, see, for example, Joy v. Wirtz, 13 F. Cas. 1172,

Look to those cases now, see Part IV.D.1, and then to a possible (but not necessary) implication of them, see Part IV.D.2 --- before moving on in Part IV.E to the reception of the old English cases in the United States.

### 1.    The Cases

Lowe first.

There, an ownership stake in a London theater was mortgaged. Lowe, 28 Eng. Rep. at 1183.  The lender assigned the mortgage to a trust, and the trust had three beneficiaries.  See id.  One of the beneficiaries tried to foreclose on the mortgage.  See id. But the Lord Chancellor held "that it would be impossible for one to foreclose without making the other two parties."  Id. Each beneficiary had to be in the case if it was to go forward. None could be left out.

Now Fell.

In that case, a junior mortgagee sued a senior mortgagee, seeking "an accounting for rents and profits."  Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1274.

The Court asked "whether there were proper parties before the court."  Fell, 29 Eng. Rep. at 152.  The two mortgagees were in the case.  See id. at 153.  But the heir to the mortgagor had not been brought in, because he was "abroad in America."  Id. at 152.

Per the Lord Chancellor, the case had to be nipped in the bud. It would be "impossible that a second mortgagee should come into this court against the first mortgagee, without making the mortgagor or his heir a party."  Id. at 153; see also Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1274-75.[24]

---

1173 (C.C.D. Pa. 1806) (No. 7,554); Smith v. Chapman, 4 Conn. 344, 345 (1822); Trecothick v. Austin, 24 F. Cas. 165, 173 (C.C.D. Mass. 1825) (No. 14,164); Picquet v. Swan, 19 F. Cas. 617, 619 (C.C.D. Mass. 1830) (No. 11,135); Gray v. Larrimore, 10 F. Cas. 1025, 1030 (C.C.D. Cal. 1865) (No. 5,721); Hernández Agosto v. López Nieves, 14 P.R. Offic. Trans. 774, 779 (1983).

[24]  The quoted statement was dictum.  See Epsilon Energy, 80 F.4th at 231; Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1274-75.  But it soon came to be treated as "a rule." Palk v. Clinton, 33 Eng. Rep. 19, 23 (Rolls 1805).  (Note,

\*    \*    \*

The <u>Lowe</u> and <u>Fell</u> cases were lined up in similar ways.

In each case, a party with an important interest in the underlying real property had not been made part of the case.  In <u>Lowe</u>, one trust beneficiary was a party, but not the other two. In <u>Fell</u>, the mortgagor's heir was across the Atlantic.

And in each case, the same holding: the missing party had a meaningful-enough interest in the property at issue, so the case could not run forward without him.  He was, in current terminology, indispensable.

### 2.    A Possible Implication

One possible lesson to draw from <u>Lowe</u> and <u>Fell</u>: a lienholder is an indispensable party in a mortgage foreclosure action.

After all, if the missing parties --- a beneficiary and the mortgagor's heir --- had to be part of the case in <u>Lowe</u> and <u>Fell</u>, why not lienholders?  Lienholders have interests in the underlying real property that are arguably comparable to the interests of the missing parties in <u>Lowe</u> and <u>Fell</u>.

And taking <u>Lowe</u> and <u>Fell</u> as supporting the idea that lienholders must be folded into a mortgage foreclosure action --- that would be consistent with a core principle of equity.

Namely, the principle that rather than doing things piecemeal, with one litigation after another, a one-stop-shop approach is the way to go.  Pulling together everyone with an interest in a dispute --- and resolving it one stroke, by one judge. <u>See</u> 1 John Norton Pomeroy, <u>A Treatise on Equity Jurisprudence</u> § 243, at 356-57 (3d ed. 1905) ("a court of equity" should "take cognizance of a controversy, determine the rights of all the parties, and grant the relief requisite to meet the ends of justice, in order to prevent a multiplicity of suits") (emphasis deleted); <u>see</u> <u>also</u> <u>Elmendorf</u> v. <u>Taylor</u>, 23 U.S. (10 Wheat.) 152, 166 (1825) ("Courts of equity require, that all the parties

---

though, that even after <u>Fell</u> some cases took issue with it, <u>see</u>, e.g., <u>Weymouth</u> v. <u>Boyer</u>, 30 Eng. Rep. 414, 415-17 (Ch. 1792), while others expressed doubt about the principle it announced. <u>See</u>, <u>e.g.</u>, <u>Montgomerie</u> v. <u>Bath</u>, 30 Eng. Rep. 1155-56 (Rolls 1797).)

19

concerned in interest shall be brought before them, that the matter in controversy may be finally settled.").[25]

As the New Jersey Court of Chancery put it, there was "no reason for making a suit for foreclosure . . . of mortgaged premises an exception to the general rule of equity, which requires that all persons in interest be parties to the suit."  Gould v. Wheeler, 28 N.J. Eq. 541, 542 (Ch. 1877).[26]

*    *    *

---

[25]  Equity's approach was not always different from the way analogous issues were handled on the law side.  See, for example, Farni v. Tesson, 66 U.S. (1 Black) 309, 315 (1861) (describing "an elemental principle of the common law, that where a contract is joint and not several, all the joint obligees who are alive must be joined as plaintiffs, and that the defendant can object to a non-joinder of plaintiffs, not only by demurrer but in arrest of judgment").  And also: Barney v. City of Baltimore, 73 U.S. (6 Wall.) 280, 286 (1867) (noting that it was historically "a rule of the common law" that when "one of several joint obligors in a contract" was "sued alone," that defendant could "plead the non-joinder of the other obligors in abatement, and in cases where the joint obligors not sued were citizens of the same State with the plaintiff, or were residents of some other district than that where the suit was brought, the jurisdiction of the court was defeated").

[26]  A mortgage foreclosure action is a way to quiet title --- a way to definitively determine who owns what when it comes to a piece of land.  To quiet title, equity sometimes turned to the bill of peace.  See, e.g., Shepherd v. Nixon, 43 N.J. Eq. 627, 633 (Ch. 1888); Fittichauer v. Metro. Fireproofing Co., 70 N.J. Eq. 429, 430 (Ch. 1905); Brady v. Cartaret Realty Co., 64 A. 1078, 1081 (N.J. 1906); cf. Cent. Pac. R.R. Co. v. Dyer, 5 F. Cas. 364, 367 (C.C.D. Nev. 1871) (No. 2,552).  The bill of peace helped "to consolidate multiple suits that involved a common claim the plaintiff could have against multiple defendants." Trump v. CASA, Inc., 606 U.S. 831, 847-48 (2025) (cleaned up); see also 1 Pomeroy, A Treatise on Equity Jurisprudence §§ 246-47, at 361-62; Zechariah Chafee, Jr., Some Problems of Equity 149-83 (1950); see generally 2 James Barr Ames, A Selection of Cases in Equity Jurisdiction 55-110 (1929).  Lowe and Fell are about a related issue, but a somewhat different one.  Not who could be brought into a case using a particular procedural device.  But who needed to be.

20

Bottom line:

The doctrine of indispensability emerged mainly from two late 1700s English equity cases, Fell and Lowe.  See Part IV.D.1.

And those cases --- understood within the broader current of equity jurisprudence --- could at least potentially be read (but did not need to be read) as support for the idea that junior lienholders in a piece of real property are indispensable.  They need to be pulled into any mortgage foreclosure action as to that piece of property.  See Part IV.D.2.

### E.    The Early American History

By the early 1800s, Lowe and Fell crossed the Atlantic.

Here, two key things happened.

First, American law took on the basic indispensability idea --- that there are some parties with "an interest in the controversy . . . of such a nature that" that there can be no case without them.  Shields, 58 U.S. at 139.

The overall history of the Lowe/Fell reception into American law is quickly discussed in Part IV.E.1.

Second, having accepted the general Lowe/Fell law of indispensability, American courts divided up as to how to apply it to cases like this one.

Did a junior lienholder need to be added to a mortgage foreclosure action?  Some American courts said yes.  Others went the other way.

Nineteenth-century American law hung up between those two pegs, stuck on the split between them.  That is walked through in Part IV.E.2 --- and the history of the debate is taken up into contemporary American law in Part IV.F.

### 1.    Reception

Start with a decision that adopted Fell "root, branch, and foliage."  Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1278; see also Epsilon Energy, 80 F.4th at 231 n.9; E.I. Dupont De Nemours & Co. v. Shell Oil Co., 1983 WL 8942, at *2 (Del. Ch. Dec. 13, 1983).

The case was Joy v. Wirtz, 13 F. Cas. 1172 (C.C.D. Pa. 1806) (No. 7,553), a creditor-debtor dispute heard before Supreme

Court Justice Bushrod Washington, riding circuit.  See Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1278-79; Kaplan, Continuing Work, 81 Harv. L. Rev. at 359.

In Joy, Justice Washington announced the principle that "[w]here the creditors are to be paid out of a particular fund, or are united in the same transaction, so as to produce a privity between them, all are to join; and the defendant shall not be obliged to litigate the same question, with each separate creditor."  Joy, 13 F. Cas. at 1172.

All but one of the creditors was then joined in the action.  See Joy v. Wirtz, 13 F. Cas. 1172, 1173 (C.C.D. Pa. 1806) (No. 7,554).  But the left-out creditor, one Abraham DuBois, could not be joined --- because his presence in the case would eliminate the diversity of citizenship needed for federal court jurisdiction.  See Hazard, Jr., Indispensable Party, 61 Colum. L. Rev. at 1280.

How to proceed?

Justice Washington cited to Fell.  And he reasoned that there should be "no difference between a person, who, on account of his residence beyond seas, cannot be made answerable to the process of the court" --- the situation in Fell, where the mortgagor's heir was "abroad in America"[27] --- "and one who, by the [diversity-jurisdiction] laws of the United States, cannot be brought into this court."  Joy, 13 F. Cas. at 1173.

DuBois was, in short, indispensable --- and the doctrine of Fell was the reason why.  The very "object of a court of equity" was the prevention of "a multiplicity of suits, to do complete justice."  Id.  And the now-imported law of indispensability was deigned to help achieve that outcome.

In the years after Joy v. Wirtz, the indispensability doctrine that it took on board became deeply embedded in American law. See, e.g., Russell v. Clarke's Ex'rs, 11 U.S. (7 Cranch) 69, 98-99 (1812); Mallow v. Hinde, 25 U.S. (12 Wheat.) 193, 198 (1827); Shields, 58 U.S. at 139, 141-42.

Justice Story put the rule in its now-familiar terminology: "persons, who are out of the jurisdiction, and are ordinarily . . . necessary parties, can be dispensed with, only . . .  when they are not indispensable to the just ascertainment of the

---

[27]  Fell, 29 Eng. Rep. at 152.

merits of the case before the Court."  Joseph Story, Commentaries on Equity Pleadings § 81, at 67 (1838) (emphasis added).[28]

### 2.    The Junior Lienholders Debate

How to apply the general doctrine of indispensability to a case like this one?  Is a junior lienholder[29] indispensable to a mortgage foreclosure action such that the case cannot go forward without the lienholder?

On this, there were two main camps.[30]

*      *      *

In New York, Chancellor Kent treated junior lienholders as indispensable.  In a mortgage dispute, after discussing Fell, he explained that "[t]he necessity of making the subsequent encumbrancers parties . . . is indispensable to justice." Haines v. Beach, 3 Johns. Ch. 459, 463-64 (N.Y. Ch. 1818); see also id. at 461 (concluding that it was the plaintiff's "duty . . . to have made the younger mortgagee a party," as "[t]he rule . . . has been well settled, and uniformly supported, that the subsequent encumbrancers must be parties").

Many courts stuck to the line laid down by Chancellor Kent. See, e.g., Cooper v. Martin, 31 Ky. 23, 25 (1833); Whitney v. Higgins, 10 Cal. 547, 551-52 (1858); Besser v. Hawthorn, 3 Or. 512, 514 (1869); Delespine v. Campbell, 45 Tex. 628, 632 (1876) (citing Haines v. Beach as illustrative of the "universally admitted" idea that "[a]ll persons interested in the mortgage should have been parties to a suit for its foreclosure; that even subsequent purchasers and incumbrancers, of whose claims the plaintiff is informed when he brings his suit, should be

---

[28]  Citing Fell and Joy v. Wirtz, see id. § 77 n.1, at 65, Justice Story elaborated, stating that a court of equity should not "by its endeavors to do justice between the parties before it, risk the doing of positive injustice, to other parties not before it, whose claims are or may be . . . meritorious."  Id. § 77, at 64-65.

[29]  In this case, the United States.

[30]  No one seemed to doubt that a junior lienholder was a proper party.  It clearly was.  See Story, Commentaries on Equity Pleadings § 193, at 146.  A lienholder could be in.  The question is whether it had to be in.

joined in the action"); Geishaker v. Pancoast, 43 A. 883, 883 (N.J. 1899) ("Chancellor Kent reviewed with approval many of the preceding cases which supported the doctrine that all persons who at the time of filing a bill to foreclose have a right to redeem must be made parties to the bill").

But Chancellor Kent's approach also came in for heavy criticism. See Smith v. Chapman, 4 Conn. 344, 346 (1822) ("Whatever are the determinations in . . . the neighbouring state of New York, in this state, the course of practice has been uniform.  Where a complete decree can be made, without impairing the rights of others, who are not parties, it is permitted to be done.") (cleaned up); see also Rowan v. Mercer, 29 Tenn. 359, 362-64 (1849) (acknowledging that in Haines v. Beach "Chancellor Kent . . . came to the conclusion that subsequent incumbrancers ought to be made parties" but concluding "that subsequent incumbrancers are not necessary parties to a bill to foreclose a mortgage"); Mack v. Grover, 12 Ind. 254, 255 & n.1 (1859) (concluding that "junior mortgagees" are merely "proper, but not necessary parties," despite a counsel's invocation of Haines v. Beach).

And Justice Story broke with Chancellor Kent.

Justice Story explained that "[t]here is much good sense" in treating "subsequent incumbrancers" (like junior lienholders) as merely "proper" parties, and "not necessary parties."  Story, Commentaries on Equity Pleadings § 193 n.5, at 147; see also id. § 193, at 146.

And Justice Story suggested that Chancellor Kent's approach, of treating junior lienholders as indispensable --- that took things too far.  "[T]he solicitude of Courts of Equity to make a final settlement of the rights of all persons interested in such a suit has carried them to an extent scarcely justifiable in point of principle or convenience."  Id. § 193 n.5, at 147.

Around the country, Justice Story's skepticism won over some courts.  See, e.g., Cullum v. Batre's Ex'x, 2 Ala. 415, 420 (1841) (citing Justice Story's Commentaries in support of the conclusion that "[i]t was competent for the complainant, to have proceeded against the mortgagors, without joining, as a defendant, either a prior, or subsequent, incumbrancer"); Montgomery v. Tutt, 11 Cal. 307, 315 (1858) (drawing upon Justice Story's Commentaries to decline to require that

24

"subsequent incumbrancers"  be joined as "indispensable parties").

*    *    *

In the end, what all this added up to was a deep split in American law.

On the question of whether a junior lienholder counted as indispensable in a mortgage foreclosure case, "[t]he cases [we]re not easily reconcilable." Montgomery, 11 Cal. at 315.

"[M]any of the adjudged cases would seem to indicate that subsequent incumbrancers . . . are indispensable parties." Id. The Chancellor Kent position.

But there was also plenty of authority for the Justice Story approach --- that, although they were "necessary parties to a complete adjustment of all interests in the property," junior lienholders were not more than that. Id.  They were "not . . . in all cases indispensable parties." Id.

### F.    Junior Lienholders Today

Fast forward to the present, and it becomes clear that the 19th century's Justice Story/Chancellor Kent fault line remains there, a fissure that is still part of our law.

Shades of Justice Story's position: under the law of some states, a mortgagee can go ahead with a foreclosure proceeding without having to join junior lienholders.  The junior lienholder is not indispensable.  See, e.g., Bayview Loan Servicing, LLC v. Chandler & Newville, Inc., 292 Or. App. 562, 572 (2018) ("'Junior lienors are not indispensable parties.'") (quoting Erne v. Goshen Veneer, Inc., 249 Or. 357, 362 (1968)); 15 West's Pennsylvania Practice, Mortgages § 2:4(e) (3d ed. 2025) ("junior mortgagees and encumbrancers, including lessees, are not entitled to be joined as parties to a mortgage foreclosure action").

And traces of Chancellor Kent's approach: the contrary rule, that "everyone with an interest junior to the mortgage must be made a party to the foreclosure suit."  6 Debtor-Creditor Law § 51.06 (Theodore Eisenberg & James M. Lawniczak eds., 2026).[31]

---

[31]  Terminology is not always applied in a consistent way.  But on this approach, the junior lienholder is, at the very least, a

25

\*       \*       \*

New Jersey is in the second camp.

In New Jersey, the "'indispensable' parties to a foreclosure action are the mortgagee, the mortgagor, and those who have acquired interests under them subsequent to the mortgage." 30 New Jersey Practice, Law of Mortgages § 28.6 (2d ed. 2025); see also, e.g., M&T Bank v. Arsenis, 2025 WL 1409479, at \*2 n.2 (3d Cir. May 15, 2025) ("New Jersey law . . . requires that lienholders be named as defendants in foreclosure actions[.]"); Norfolk Bldg. & Loan Ass'n v. Stern, 113 N.J. Eq. 385, 387 (Ch. 1933) ("A complainant in foreclosure may not omit, as a party to his proceeding, one who holds a subsequent incumbrance[.]"); Gould, 28 N.J. Eq. at 542 ("A mortgagee who comes into court for foreclosure . . . is not at liberty to omit, as parties to the proceedings, those who hold encumbrances subsequent to his own.").

### G.    Junior Lienholders: Federal Law

Where things stand.

The early English cases that spun off indispensability law can potentially be taken to suggest that junior lienholders are indispensable --- that they must be brought into mortgage foreclosure actions.  But the cases certainly do not need to be read that way.  See Part IV.D.

American law, after it received the indispensability doctrine from England, has long been split.  In the 19th century, some American courts held that junior lienholders were indispensable to a mortgage foreclosure action.  Others landed on the opposite conclusion.  See Part IV.E.2.

---

necessary party.  See, e.g., Movement Mortg. LLC v. Haymon, 2025 WL 3459602, at \*2 (N.D. Ga. Nov. 26, 2025) ("[U]nder Georgia law, the borrower and all junior lienholders are necessary parties."); Fed. Nat'l Mortg. Ass'n v. Active Mgmt. Props. LLC, 2025 WL 3451875, at \*7 (E.D.N.Y. Mar. 14, 2025) ("in an action for foreclosure of a mortgage, every person having any lien . . . upon the real property which is . . . subordinate to the lien of the plaintiff [is a] necessary defendant") (cleaned up); Bank of Am., N.A. v. Loopeker, 2013 WL 6501695, at \*2 n.2 (D.V.I. Dec. 10, 2013) ("Entities holding junior liens must be made defendants in a foreclosure lawsuit.").

And the divide is still there.  Today, some states' laws make junior lienholders indispensable to mortgage foreclosure actions.  Others do not.  <u>See</u> Part IV.F.

That is the precise issue in this case: is the junior lienholder (the United States) indispensable to the underlying mortgage foreclosure action?

As to that issue, there has been, in short, no clear through line --- no durable consensus approach in American law.

How then to procced?

\*    \*    \*

As noted, the question of whether the junior lienholder is indispensable must be answered as a matter of <u>federal</u> law.  <u>See Provident Tradesmens</u>, 390 U.S. at 125 n.22; <u>see also</u>, e.g., <u>Huber</u>, 532 F.3d at 247; <u>Shetter</u>, 14 F.3d at 937; <u>Sheldon</u>, 718 F.2d at 606.

What is federal law here?

### 1.    <u>A Source of Federal Law</u>

Federal law is bottomed, first and foremost, on Federal Rule of Civil Procedure 19.

But the Third Circuit has suggested that <u>state</u> law can help to inform the Rule 19 analysis.  <u>See Gen. Refractories Co.</u> v. <u>First State Ins. Co.</u>, 500 F.3d 306, 321 (3d Cir. 2007); <u>see also</u> <u>HB Gen. Corp.</u> v. <u>Manchester Partners L.P.</u>, 95 F.3d 1185, 1192 (3d Cir. 1996); <u>Delta Fin. Corp.</u> v. <u>Paul D. Comanduras & Assocs.</u>, 973 F.2d 301, 305 (4th Cir. 1992); <u>Schutten</u> v. <u>Shell Oil Co.</u>, 421 F.2d 869, 873-74 (5th Cir. 1970); 7 <u>Wright & Miller's Federal Practice & Procedure</u> § 1603 (3d ed. 2025).

State law, the Third Circuit has indicated, is "applicable . . . insofar as it assists in determining the . . . status [of the entity that cannot be joined] as governed ultimately by Rule 19."  <u>Shetter</u>, 14 F.3d at 937.

That suggests it may make sense to look to <u>state</u> joinder/indispensability law to discern the content of <u>federal</u> Rule 19/indispensability law.

\*    \*    \*

27

And it makes sense to lean especially heavily on state joinder/indispensability law in a case that, like this one, concerns a mortgage foreclosure action.

To see why, take the Supreme Court's decision in United States v. Brosnan, 363 U.S. 237 (1960).

There, the question was whether a mortgage foreclosure on a particular piece of real property automatically divested junior liens on the property.  See id. at 238-39.

To answer,[32] the Supreme Court indicated that "it is desirable to adopt as federal law state law governing divestiture of [certain] liens."  Id. at 241.

The reason why: liens touch upon "an area of complex property relationships long since settled and regulated by state law."[33] Id. at 242.  "We think it more harmonious with the tenets of our federal system . . . not to inject ourselves into the network of competing private property interests."  Id.

*    *    *

Two main takeaways from the above.

Per the Third Circuit, a look to state law can, as a general matter, be used to "assist[] in determining" federal Rule 19/indispensability law.  Shetter, 14 F.3d at 937.

And per Brosnan, state law can have a particularly large role to play in cases like this one --- cases that, at their core, are about real property.[34]

---

[32]  In the absence of a governing statute.  See Brosnan, 363 U.S. at 252.  ("[I]n response to Brosnan," Congress amended 26 U.S.C. § 7425 and 28 U.S.C. § 2410.  See United States v. Capobianco, 836 U.S. 808, 815 (1988).)

[33]  Federal courts have long recognized the importance of local interests in cases involving real property.  Some examples from various time periods: Wheeling Bridge & Terminal Ry. Co. v. Reymann Brewing Co., 90 F. 189, 195 (4th Cir. 1898); Lane v. Corwin, 63 F.2d 767, 769 (2d Cir. 1933); Popp v. Eberlein, 409 F.2d 309, 311 (7th Cir. 1969); Scoggins v. Frederick, 629 F.2d 426, 427 (5th Cir. 1980).

[34]  When a federal interest is in play, that is often a reason to look to a purely federal rule --- one that is uniform across the country, with none of the tinge of multiplicity that can creep

\*    \*    \*

Before moving on to discuss the implications of the above in Part IV.G.2, note a possible reason why Brosnan might not be taken as looming large in this case.

The reason: Brosnan is not controlling here.

The issue in Brosnan was whether federal law should follow state law on a substantive question --- is a junior lien automatically divested by a mortgage foreclosure?  See Brosnan, 363 U.S. at 238-39; see also United States v. Bluhm, 414 F.2d 1240, 1243 (7th Cir. 1969).

But the issue teed up here is different.  It is about the extent to which federal law might follow state law on a procedural question --- namely, as to when a junior lienholder indispensable, such that it must be made part of a mortgage foreclosure action.

These two questions sit on a different footing, one from the next.[35]

_____

in when a federal rule is built, in part, from state rules.  Cf. Paul J. Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U. Pa. L. Rev. 797, 813-20 (1957).  Given this point, it might be argued, state law should not influence federal Rule 19 law when there is a federal interest on table.  And here, one such interest arguably is --- the federal tax lien.  But this is not a meaningful way to distinguish this case from Brosnan's way of thinking.  After all, Brosnan also concerned a federal tax lien.  And any federal interest it generated was "outweighed by the severe dislocation to local property relationships which would result from our disregarding state procedures."  Brosnan, 363 U.S. at 242.  A purely federal rule, per the Brosnan Court, might "embarrass[]" certain "accepted . . . means of enforcing private liens . . . and many titles already secured by such means would be cast in doubt." Id.

[35]  The difference may matter.  In diversity cases (and diversity would be the basis for jurisdiction here if the United States were dispensable), state substantive law typically controls. See United States v. Standard Oil Co. of Cal., 332 U.S. 301, 307 (1947).  State procedural law does not.  See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).  So an especially close look to state law to craft a federal

\*    \*    \*

But even though <u>Brosnan</u> is not controlling, it is highly instructive.

Take two reasons why.

<u>First</u>, the Supreme Court's language in <u>Brosnan</u> was broad.  Broad enough to suggest that in thinking through even the governing federal <u>procedural</u> law, state law should be given a prominent seat at the table --- at least in cases like <u>Brosnan</u>, that concern real property.

Per <u>Brosnan</u>, "disregarding state <u>procedures</u>" is to be avoided. <u>Brosnan</u>, 363 U.S. at 242 (emphasis added).  "[A]ccepted . . . <u>means</u> of enforcing private liens" should count.  <u>Id</u>. (emphasis added).  "[W]ell-established state <u>procedures</u> governing the[] enforcement" of local property interests should not be "displaced."  <u>Id</u>. (emphasis added).

And a <u>second</u> point.

When it comes to a particular sub-set of real-property-related federal cases --- those, like this one, that relate to mortgage foreclosure actions --- there is an <u>added</u> reason for federal procedural law to draw on state procedural law.

The reason: in mortgage foreclosure actions, there is not always a sharply-drawn line between procedural and substantive law.

A state's procedural law (a rule, say, that junior lienholders are indispensable to a mortgage foreclosure action) will often be understood as downstream of the state's substantive law (a rule, say, that the interest of a junior lienholder is automatically extinguished by a mortgage foreclosure).

After all, the thinking goes, if a mortgage foreclosure action will automatically eliminate someone's property interest (the substantive rule), then it makes sense that he must be made a part of the case so he can get a say in it (the procedural rule).[36]

---

<u>substantive</u> rule (as in <u>Brosnan</u>) does not necessarily speak to how closely a court might look to state law to craft a federal <u>procedural</u> rule (the issue in play here).

[36]  The joinder "requirement reflects the basic purpose of foreclosure proceedings: to extinguish the redemption rights of

In short, in the mortgage foreclosure area the state law substantive rule often drives the state law procedural rule, and gets them working as a pair.

So trying to pry substance and procedure apart makes less sense than usual --- and there is therefore especially strong reason for a federal diversity court (thinking through federal procedural law as to Rule 19/indispensability) to look to state procedural law (even though federal diversity courts generally rely on state substantive law, but not state procedural law).

As a leading treatise has put it: "state substantive interests occasionally may be so bound up with local rules relating to joinder that they could have a significant effect on the way the federal court decides [the indispensability issue]."  7 Wright & Miller's Federal Practice & Procedure § 1603.

*     *     *

To summarize:

In thinking through how the federal law of Rule 19/indispensability should apply in a given case, the Third Circuit has indicated that a federal court can be guided to an extent by the relevant state's analogous bodies of law.

---

all parties holding subordinate interests and to convey full title to the purchaser at the judicial sale."  N.Y. 555 LLC v. 1055 Park Ave PH LLC, 2025 WL 3231923, at *1 (S.D.N.Y. Nov. 18, 2025).  This is why, in many states, if a person or entity who must be joined in a foreclosure proceeding is not successfully joined, they will not be bound and their interest will not be extinguished.  See generally Deutsche Bank Nat'l Tr. Co. v. Mark Dill Plumbing Co., 903 N.E.2d 166, 169 (Ind. Ct. App. 2009); In re Crablex, Inc., 762 N.W.2d 247, 253 (Minn. Ct. App. 2009); Brost v. L.A.N.D., Inc., 680 P.2d 453, 455 (Wash. Ct. App. 1984); cf. Latef v. Cicenia, 2015 WL 10458543, at *3 (N.J. Super. Ct. App. Div. Mar. 14, 2016) (concluding that a bank was "an indispensable party" where a "plaintiff sought relief that would potentially extinguish any claim by [the bank] on the mortgage," though"[i]n the absence of joinder, the potential also existed that a judgment would not be binding on [the bank]").

And under the Supreme Court's <u>Brosnan</u> decision, in real-property-focused cases[37] a federal court can put <u>added</u> weight on the relevant state's indispensability/joinder law.

To be sure, <u>Brosnan</u> commands a look to state substantive law, not procedural law.  But <u>Brosnan</u> applies here.  Given the breadth of the <u>Brosnan</u> Court's language.  And because in mortgage foreclosure cases[38] substantive and procedural rules are closely bundled together --- so there is reason not just to follow state substantive law (as is required in diversity cases) but also to be very closely attentive to state procedural law (because in mortgage foreclosure cases state procedural law is often tightly entwined with state substantive law).

### 2.    <u>Choice of Law</u>

As laid out in the preceding section, <u>see</u> Part IV.G.1, to determine how federal Rule 19/indispensability law should apply in this case, a federal court can rely heavily on analogous bodies of state law --- state law as to joinder and indispensability.

But <u>which</u> state's law?

The question may matter a good deal, because of the differences between states' laws in this area.  <u>See</u> Part IV.F.

But the question is not a tough one.

The longstanding and all but universal rule: where "the interest [is] in real property, the rule of property of the state in which it is situated controls."  <u>Beers</u> v. <u>Commissioner</u>, 78 F.2d 447, 450 (3d Cir. 1935).[39]

---

[37]  Like this one.

[38]  Like this one.

[39]  <u>See</u> <u>also</u> <u>In re Town Ctr. Flats, LLC</u>, 855 F.3d 721, 724 (6th Cir. 2017) ("[p]roperty rights are determined under the law of the state in which the real property is located"); <u>Rio Grande Silvery Minnow</u> v. <u>Bureau of Reclamation</u>, 599 F.3d 1165, 1177 (10th Cir. 2010) ("questions involving ownership, transfer and title to real estate have traditionally been resolved according to the laws of the state where the realty is located") (cleaned up); <u>see</u> <u>generally</u> <u>Upper Skagit Indian Tribe</u> v. <u>Lundgren</u>, 584 U.S. 554, 567 (2018) (Thomas, J., dissenting) (discussing "the ancient principle of <u>lex rei sitae</u>," whereby "'land is governed

And this rule applies in the mortgage foreclosure context.  See, e.g., Restatement (Second) of Conflict of L. § 229 (A.L.I. 1971) (incorporating "the local law of the situs"); Restatement (First) of Conflict of L. § 227 (A.L.I. 1934) ("The method and effect of the foreclosure of a mortgage on land are determined by the law of the state where the land is."); see also Restatement (Second) of Conflict of L. §§ 228, 230 (similar).

Bottom line: in a mortgage foreclosure case, federal Rule 19/indispensability law should be applied with close reference to the joinder/indispensability law of the state where the underlying real property is located.

*    *    *

There do not appear to be many decided cases in this area.  But what there is supports the just-stated conclusion.

Take U.S. Bank National Association v. Collins-Fuller T., which began as a foreclosure action filed by a mortgagee-plaintiff in Illinois federal court. See 2015 WL 1089328, at *1 (N.D. Ill. Mar. 9, 2015).

The mortgagee-plaintiff named the homeowners as defendants.  See id.  But it also named a bank that held "a junior lien on the property pursuant to a separate mortgage." Id.  And after some investigation, the mortgagee-plaintiff learned that the presence of the junior lienholder would defeat complete diversity and destroy the basis for federal jurisdiction.  Id.

What to do?  In undertaking the indispensability analysis, the district court considered the Illinois Mortgage Foreclosure Law and concluded that the junior lienholder was an indispensable party.  See id. at *3-4.

On appeal, the Seventh Circuit affirmed.  See U.S. Bank Nat'l Ass'n v. Collins-Fuller T., 831 F.3d 407, 410-11 (7th Cir. 2016).

It, too, looked to Illinois' foreclosure law, holding that because the junior lienholder's "presence was required before the litigation could completely extinguish all liens on the property, yet joining it was not feasible (because its presence

---

by the law of the place where it is situated.'") (quoting 1 Francis Wharton, A Treatise on the Conflict of Laws § 273, at 607 (George H. Parmele ed., 3d ed. 1905)).

33

destroyed diversity), the district court reasonably concluded that 'in equity and good conscience' it should dismiss the suit."  Id. at 410 (quoting Fed. R. Civ. P. 19(b)).

Why the focus on Illinois foreclosure law?  Because the underlying mortgaged property was located there.  See Complaint to Foreclose Mortgage ¶ 10(i), Collins-Fuller T., 2015 WL 1089328 (No. 12-5057); Collins-Fuller T., 831 F.3d at 408.[40]

\*    \*    \*

In sum:

To determine how federal Rule 19/indispensability law applies here, the Court will be guided to a real extent by the law of indispensability and joinder of the state where the underlying real property is located.

That follows from general choice of law principles.  And it is consistent with the limited caselaw in this area.

### H.    This Case

For the reasons laid out just above in Part IV.G, the Court here looks to state joinder/indispensability law --- and the relevant body of state law here is New Jersey's.

The real property at issue is in New Jersey.  See Exhibit 1 at 9.  Therefore, any mortgage foreclosure action here needed to go forward in New Jersey.  See N.J. Ct. R. 4:3-2(a).

In turn, New Jersey mortgage foreclosure actions apply New Jersey procedural law.  See Light v. Granatell, 171 N.J. Super. 557, 563 (App. Div. 1979); see also N. Bergen Rex Transp., Inc.

---

[40]  The litigation described in the text is no outlier.  One federal district court has looked to the laws of the state where the mortgaged property is located to conclude that a nonparty must either be joined in a foreclosure action (assuming that could be done "without the depriving the court of subject matter jurisdiction"), or the case would be dismissed.  CIT Bank, N.A. v. Locastro, 2018 WL 4635728, at \*1 (E.D.N.Y. Aug. 2, 2018), report and recommendation adopted, 2018 WL 4026737, at \*2 (E.D.N.Y. Aug. 22, 2018).  Another has indicated that it was "guided by" the relevant state laws to decide whether "creditors . . . qualify as Rule 19 parties" in a mortgage foreclosure.  1S REO Opportunity 1, LLC v. 223 Howard LLC, 2026 WL 279824, at \*1, \*7-9 (E.D.N.Y. Feb. 3, 2026).

v. <u>Trailer Leasing Co.</u>, 158 N.J. 561, 569 (1999); <u>BSAF Corp.</u> v. <u>Lyondell Chem. Co.</u>, 2010 WL 5288645, at *3 (N.J. Super. Ct. App. Div. Dec. 28, 2010).

And under New Jersey law, persons or entities "who have acquired interests . . . subsequent to the mortgage," like junior lienholders, are "'indispensable' parties."  30 <u>New Jersey Practice, Law of Mortgages</u> § 28.6 (emphasis added).

This strongly tilts the scale in favor of the conclusion that, as a matter of federal Rule 19/indispensability law, the junior lienholder here is as an indispensable party.[41]

\*    \*    \*

But this is not the end of the road.

The relevant issue are resolved as a matter of federal law.  <u>See</u> <u>Provident Tradesmens</u>, 390 U.S. at 125 n.22.

So while state indispensability law can throw off some helpful light, it is no be-all-and-end-all.

The federal law of indispensability is tethered to Rule 19(b). <u>See</u> <u>Fed. Kemper Ins. Co.</u> v. <u>Rauscher</u>, 807 F.2d 345, 354 n.5 (3d Cir. 1986).  And only after working through Rule 19(b)(1) to (4) can a party be determined to be "indispensable."  <u>See</u> 7 <u>Wright & Miller's Federal Practice and Procedure</u> § 1607 (3d ed.); 4

---

[41]  No one has argued that anything should be different about the analysis because the junior lienholder is the United States. And any such distinction would not seem to be viable. Historically, a junior lienholder <u>was</u> sometimes treated differently when it was the United States (or a state).  <u>See</u> <u>The Siren</u>, 74 U.S. (7 Wall.) 152, 157 (1868) (as to when the United States had a fee); <u>Christian</u> v. <u>Atl. & N.C.R.R. Co.</u>, 133 U.S. 233, 243 (1890) (as to when a state had less than a fee, a lien).  But any difference in this area between the United States (or a state) and other lienholders was generated entirely by their sovereign immunity.  <u>See</u> <u>The</u> <u>Siren</u>, 74 U.S. at 157; <u>Christian</u>, 133 U.S. at 243; <u>United States</u> v. <u>Alabama</u>, 313 U.S. 274, 282 (1941); <u>United States</u> v. <u>Cless</u>, 254 F.2d 590, 592 (3d Cir. 1958); <u>Whelpley</u> v. <u>Knox</u>, 176 F. Supp. 936, 937-38 (D. Minn. 1959); <u>Brosnan</u>, 363 U.S. at 251.  But no difference along those lines can matter here.  There is no sovereign immunity issue in federal tax lien cases like this one, because the United States has given up that immunity.  <u>See</u> 28 U.S.C. § 2410(a)(2).

35

Moore's Federal Practice § 19.05 [7]; see also Provident Tradesmens, 390 U.S. at 119.

Tick through those factors now.

*    *    *

The Rule 19(b) factors focus, first, on the possibility of "prejudice" to the necessary party, here the United States, if the case goes on without it in federal court.  See Fed. R. Civ. P. 19(b)(1).

Second, Rule 19(b) considers "whether the plaintiff would have an adequate remedy if the [federal-court] action" were dismissed.  See id. 19(b)(4).

And third, Rule 19(b) zeroes in on whether a federal-court remedy, rendered without a necessary party, "would be adequate." Id. 19(b)(3).  This factor captures some of what the Supreme Court has referred to as "'the interests of the courts and the public in complete, consistent, and efficient settlement of controversies.'"  4 Moore's Federal Practice § 19.05 (quoting Provident Tradesmens, 390 U.S. at 111).[42]

These factors push in favor of the conclusion that the United States should be kept in the case, which means that this mortgage foreclosure action should go forward in state court in New Jersey, not here.

*    *    *

The core purpose of the underlying mortgage foreclosure action is to "establish[]" "the[] rights" of all relevant parties, Norfolk Bldg. & Loan Ass'n, 113 N.J. Eq. at 387, and by doing so to definitively clear title --- so that "the purchaser at the foreclosure sale" can receive "the title and estate . . . free from subsequent encumbrances."  Cent. Penn Nat'l Bank v. Stonebridge Ltd., 185 N.J. Super. 289, 302 (Ch. 1982).

But going full steam ahead in federal court, without the United States (and its junior lien), would run counter to this.

If the United States is absent, its "tax lien on the property w[ill] survive the foreclosure."  Dec. 4, 2025 Letter from the United States at 1; see also Plaintiff's Nov. 25, 2025 Letter at

---

[42]  There is a fourth factor, too, discussed at footnote 43.

36

2-4; cf. footnote 36.  Title would therefore remain cloudy after a separate state-court proceeding, not clear.

The Plaintiff would suffer, faced with the choice of either "fil[ing] a separate foreclosure action against the United States . . . in the [s]tate court . . . to foreclose against the subordinate tax lien," or accepting a diminution in value at an eventual sale because "[t]itle obtained [there] . . . would be subject to the United States' subordinate tax lien." Plaintiff's Nov. 25, 2025 Letter at 4.

And the United States might well suffer, too.  "[P]iecemeal" litigation might "potentially delay the United States['] ability to recoup surplus funds."  Dec. 4, 2025 Letter from the United States at 2.

The Plaintiff would be able to join the United States in state court, as has been discussed.  And so the remedy that the state court can potentially offer (a soup-to-nuts clearing of title) would be far more "complete," Provident Tradesmens, 390 U.S. at 111, than any (partial) remedy the Plaintiff could potentially get here in federal court.

Accordingly, going forward in federal court without the United States would "require[] the [C]ourt to enter a judgment that does not fully resolve [the] dispute."  4 Moore's Federal Practice § 19.05.  Such an "essentially hollow" judgment should be avoided if possible.  Id.

Here, it is.  Sending this case, as a whole, to New Jersey's state courts allows for the dispute to be "fully resolve[d]." Id. (emphasis added).[43]

*     *     *

In sum:

Both New Jersey law and the Rule 19 factors point the needle in the same direction.  Namely, the United States is indispensable here.  This case cannot go forward without it.

---

[43]  There is a remaining Rule 19(b) factor.  It looks to ways "any prejudice could be lessened or avoided."  Fed. R. Civ. P. 19(b)(2).  But no party has made this sort of proposal, and the best way to address "prejudice" is to proceed in state court, where every stakeholder can be joined.

37

## V.    Remand or Dismiss

The Court has determined that there is no jurisdiction in this case.

There is no jurisdiction under certain theories addressed in a prior Opinion and Order.  See DuBois, 808 F. Supp. 3d at 680 n.6.

The Defendant has not shown there is federal question jurisdiction.  The mere presence of a federal tax lien does not check that box.  See Part III.

And there is no diversity jurisdiction.  The United States is indispensable.  It must be kept as a party to this case.  See Part IV.  And keeping the United States in means there is no diversity jurisdiction.  See DuBois, 808 F. Supp. 3d at 682.

*    *    *

Because there is no jurisdiction, it looks like this case must be remanded back to state court.

Title 28, United States Code, Section 1447(c) seems to cinch it: "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

This statute closes off any possible discretion.  It is mandatory.  It says "shall."  See 16 Moore's Federal Practice § 107.151 ("Whenever it appears, at any time before final judgment, that the federal district court lacks subject matter jurisdiction, the court must remand the case.") (emphasis added); Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 28 (2025) (same); see generally Dessouki v. Att'y Gen., 915 F.3d 964, 966 (3d Cir. 2019) ("the word 'shall' imposes a mandatory requirement").

*    *    *

The Defendant, though, proposes a different approach.  See Defendant's Dec. 2025 Letter at 3-4.

He argues that "under a strict construction" of Rule 19, where a party is determined to be indispensable, the action has to be dismissed.  See id. at 3.

The basis for this is Rule 19(b), under which "a person who is required to be joined if feasible cannot be joined, the court

38

must determine whether, in equity and good conscience, the action should proceed among the existing parties <u>or should be dismissed</u>."  Fed. R. Civ. P. 19(b) (emphasis added).

If Rule 19(b) mandated dismissal it might be in tension with Section 1447, which mandates remand.

But Rule 19(b) does not purport to require dismissal.  It directs "the court [to] determine whether . . . the action . . . <u>should</u> be dismissed."

And "should" is "permissive rather than mandatory."  <u>Culbert</u> v. <u>Young</u>, 834 F.2d 624, 628 (7th Cir. 1987); <u>Lambert</u> v. <u>Austin Maint. & Constr., Inc.</u>, 544 F.3d 1192, 1196-97 (11th Cir. 2008); <u>United States</u> v. <u>Maria</u>, 186 F.3d 65, 71 (2d Cir. 1999); <u>see also</u> <u>United States</u> v. <u>Swan</u>, 275 F.3d 272, 278-79 (3d Cir. 2002).

"Should" this case be dismissed under Rule 19(b)?  No.  Because of Section 1447(c)'s command that it not be.

The Third Circuit has followed that course.  See <u>Steel Valley Auth.</u> v. <u>Union Switch & Signal Div.</u>, 809 F.2d 1006, 1009-10, 1015 (3d Cir. 1987) (directing a district court to "remand" a case to the state court from which the case was removed where there was an "indispensable and nondiverse" party); <u>see also</u> <u>Polo</u> v. <u>Innoventions Int'l, LLC</u>, 833 F.3d 1193, 1196 (9th Cir. 2016).

And note that this case was first brought in state court and then removed to federal court by the Defendant.  See Notice of Removal ¶ 1-2.  But the case cannot go forward here, for reasons discussed throughout this Opinion and Order.  It would not make sense to allow the Defendant to wrongly remove a state court case to federal court --- and then, by virtue of having done so, to obtain a dismissal of the case.  That would not be consistent with the "equity and good conscience" that Rule 19 requires.  It would, rather, be badly at odds with it.

## VI.  Conclusion

The Court lacks jurisdiction.  Therefore, the motion to remand at ECF 6 is granted.

IT IS on this 24th day of March, 2026, **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.

39